IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JONATHAN VOORHIS, | ) | |
| | ) | No. 1:23-CV-93 |
| Plaintiff | ) | |
| | ) | RICHARD A. LANZILLO |
| v. | ) | Chief United States Magistrate Judge |
| | ) | |
| LT. LINDSEY, | ) | SUPPLEMENTAL REPORT AND |
| | ) | RECOMMENDATION |
| | ) | |
| Defendant | ) | ECF NOS. 86, 91 |

I.    Recommendation

Because genuine issues of material fact remain for trial, it is respectfully recommended that both Plaintiff Voorhis' motion for summary judgment (ECF No. 86) and Defendant Lindsey's cross-motion for summary judgment (ECF No. 91) be denied.

II.  Report

A.    Background

On January 15, 2026, the undersigned issued a Report and Recommendation ("R&R") on the cross-motions for summary judgment filed by Plaintiff Jonathan Voorhis ("Voorhis") and Defendant Lt. Lindsey ("Lindsey").  Finding that genuine issues of material fact precluded judgment as a matter of law for either party, the undersigned recommended that both motions be denied. *Id.*, p.1.  Only Voorhis filed objections. ECF No. 117.  On March 12, 2026, the Court issued a Memorandum Order declining to adopt the R&R and referring the matter back to the undersigned to consider the following three objections raised by Voorhis: (1) the undersigned's

1

original "R&R fails to address 'the undisputed second [OC] spraying incident'" (ECF No. 119, p. 3) (quoting ECF No. 117 (objections); (2) in light of Lindsey's admission that he used a "pressure point technique" on Voorhis, the undersigned should have evaluated the reasonableness of that admitted use of force rather than rely upon the inconclusive nature of the video evidence (*id.*); and (3) an inconsistency exists between the undersigned's "findings" that "Plaintiff's "mule kicks" were "minimally sufficient to raise an issue of fact as to whether [initial use of OC spray] was reasonable to restore order, mitigate disruption, and avoid damage to prison property" (ECF No. 116, at pp. 10-11) and the undersigned's earlier observation that "[t]here is nothing in the video or other record materials to support a finding that [Plaintiff] was engaging in any disruptive behavior when Lindsey returned to his cell, opened his wicket, and sprayed him." (Id. at p. 8).   This Supplemental Report addresses each objection.[1]

> B. Standard of Review Where Party Moving for Summary Judgment Has the Ultimate Burden of Proof

"When the moving party seeks summary judgment based on a claim … upon which the moving party bears the ultimate burden of proof at trial, the moving party must establish every element of that claim … as a matter of law such that no reasonable jury could return a verdict for the nonmovant." *Int'l Ass'n of Heat & Frost Insulators & Asbestos Workers Loc. Union 42 v. Absolute Env't Servs., Inc.*, 814 F. Supp. 392, 401 (D. Del. 1993) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986);

---

[1] To avoid redundancy, the undersigned incorporates the prior R&R's discussion of the record evidence and relevant legal principles, including the factors to be considered under *Whitley v. Albers*, 475 U.S. 312 (1986).

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *J.F. Freeser, Inc. v. Serv–A–Portion, Inc.*, 909 F.2d 1524, 1531 (3d Cir.1990); 10A C. Wright, et al., Federal Practice and Procedure § 2727 (1983)). "By contrast, when the moving party seeks summary judgment based on a claim ... upon which the nonmovant bears the ultimate burden of proof at trial, the moving party need only establish that there exists no genuine issue of material fact as to any essential element of the nonmovant's claim or defense." *Id.* "Any doubt with respect to the existence of a genuine issue of material fact will be resolved by the Court against the moving party." *Id. See also, National State Bank v. Federal Reserve Bank*, 979 F.2d 1579, 1582 (3d Cir.1992) ("Where the party moving for summary judgment is the plaintiff, or the party who bears the burden of proof at trial, the standard is more stringent."); *Resol. Tr. Corp. v. Gill*, 960 F.2d 336, 340 (3d Cir. 1992) (explaining that "where the movant bears the burden of proof at trial and the motion does not establish the absence of a genuine factual issue, the district court should deny summary judgment even if no opposing evidentiary matter is presented."); *Bond v. Rhodes*, No. 2:06CV1515, 2009 WL 2413739, at *1 (W.D. Pa. July 31, 2009) (same).

C. Discussion

1. Second OC Spray Use of Force

In evaluating Voorhis' request for judgment as a matter of law, the Court views the evidence and inferences reasonably drawn from those facts in favor of Lindsey and with the understanding that Voorhis has the burden of proof as to each element

3

of his excessive force claim.  Because the record regarding the second use of OC spray demonstrates the existence of several genuine issues of material fact, Voorhis' motion for summary judgment on this aspect of his excessive force claim should be denied.

The material factual disputes begin with the timing of the second use of OC spray and the sequence of conduct that precipitated it.  Neither is definitively established by the video or any other evidence of record.  For his part, Voorhis contends that the second use of OC spray was entirely gratuitous and without justification.  *See* ECF No. 94-1, pp. 52-53.  He testified at his deposition that after he was returned to his cell following decontamination, he "started washing [his] face" when "they spray[ed] me again...." *Id.*, p. 55.  Voorhis denies receiving any commands before he was sprayed. *Id.*  But the video evidence supports a finding that the second discharge of OC spray was in response to Voorhis' repeated defiance of orders given by Lindsey and another corrections officer.  Specifically, the video shows that the second use of OC spray occurred only after another officer and Lindsey ordered Voorhis at least four times to put his "hands out" through the wicket of his cell to allow for removal of his handcuffs and that Voorhis failed to comply with each command.  *See* ECF Nos 94-5, 94-6.  The video also supports that these repeated orders were loud enough to be easily heard by Voorhis. *Id.*  The video further shows that after the officers issued their commands, Voorhis turned and walked away from the cell door and proceeded to the sink in his cell. *Id.*  When the video is considered with Voorhis' deposition testimony that he was sprayed while washing at the sink, an ample record exists for a reasonable jury to reject Voorhis' version of events and

4

credit Lindsey's position that the second use of OC spray occurred only after Voorhis defied repeated orders by the officers. No second use of OC spray is observable in the video prior to Voorhis' failures to comply with instructions and his use of the sink.

Viewing all evidence in a light most favorable to Lindsey, and drawing all reasonable inferences in favor of Lindsey, a reasonable jury could find that the second use of OC spray was applied in good faith to secure Voorhis' compliance after he repeatedly defied the officers' orders and was not done maliciously and sadistically to cause harm. *See Higgs v. Sanford*, 2009 WL 805121 at *4 (W.D. Ky. March 25, 2009) (granting summary judgment to Defendant who used short burst of pepper spray to control inmate who did not respond to verbal command). Although the record also could support a finding that the second use of OC spray was unnecessary and maliciously motivated, the record does not compel such a finding as a matter of law.

The record is also sufficient to support a reasonable jury's finding that the second use of OC spray was *de minimis* and, as such, that it does not satisfy the objective element of an excessive force claim. *See Pullen v. Tabor*, No. 20-cv-50, 2024 WL 3821927, at *11 (S.D. Ohio Aug. 13, 2024) (finding use of OC spray a *de minimis* injury even though "OC spray is certainly unpleasant" because it is not "inherently repugnant"); *McDougald v. Eaches*, No. 18-cv-80, 2019 WL 5188369 at *4 (S.D. Ohio Oct. 15, 2019) (finding objective element not met because though plaintiff suffered some discomfort from OC spray, it was not a permanent or other type of serious injury); *Smalls v. S.C. Dep't of Corr.*, No. 6:09–2654–TLW–WMC, 2009 WL 5062393, *4 (D.S.C. Dec. 16, 2009) (injuries to eyes from alleged mace use *de minimis* where

5

plaintiff failed to seek medical attention); *Brown v. Spencer*, No. 3:07–CV–61, 2008 WL 4763317, at *4 (N.D. W.Va. Oct. 29, 2008) (summary judgment appropriate where plaintiff suffered only *de minimis* injuries resulting from use of pepper spray). The record in this case includes no evidence that a significant amount of OC spray was discharged into Voorhis' cell. And the fact that it is impossible to perceive from the video precisely when OC spray was used indicates that the discharge was brief. In addition, the record clearly supports a finding that the second discharge of OC spray was from a position several feet away from Voorhis. According to Voorhis' testimony, OC spray was discharged through the wicket of the cell door while he was facing the sink. As the video reflects, this would place Voorhis several feet away from the discharge. Courts have held that the brief discharge of OC spray from a distance represents a *de minimis* use of force inadequate to support the objective element of an excessive force claim. *See, e.g., Thompson v. Joseph*, No. 1:12-CV-992, 2014 WL 1685918, at *8 (S.D. Ohio Apr. 29, 2014), *report and recommendation adopted*, No. 1:12CV992, 2014 WL 2172894 (S.D. Ohio May 23, 2014) (holding that "the brief use of spray employed by Defendant was arguably so objectively a '*de minimis*' use of force as to fail to demonstrate an Eighth Amendment claim"). *Cf. Dean v. Jones*, 984 F.3d 295, 303 (4th Cir. 2021) (holding that a "reasonable jury could find that a sustained blast of pepper spray directly to the face constitutes something more than *de minimis* force").

Under *Whitley*, relevant considerations for evaluating the reasonableness of force include "the need for the application of force, the relationship between the need

and the amount of force that was used, [and] the extent of injury inflicted...." *Whitley*, 475 U.S. at 321. Thus, the reasonableness of the second use of OC spray depends, in significant part, on whether Voorhis' defiance of commands warranted the use of force, and if so, whether the duration and volume of OC discharged was reasonable, and whether Lindsey could have effectively used lesser force in response to Voorhis' noncompliance. Voorhis' request for judgment should be denied because a reasonable jury could find based on the evidence that (1) force was necessary to secure Voorhis' compliance with commands, (2) the limited discharge of OC spray from a distance was both reasonable and *di minimis*, (3) further verbal commands likely would have been ineffective given the repeated commands Voorhis had already ignored, (4) a brief discharge of OC spray from a distance was more reasonable than any "hands-on" use of force due to the risk of escalation and injury associated with the latter; and (5) Voorhis sustained no injury other than temporary discomfort from the OC spray.

2. Use of "Pressure Point Technique"

Corrections officers returned Voorhis to his cell after he was decontaminated following the first use of OC spray. When the officers opened the cell door, Voorhis refused to enter. ECF No. 94-1 at p. 46. When Voorhis refused to enter the cell, the escorting officers radioed for assistance from a lieutenant. *Id.* at p. 47. Lindsey arrived at the cell a short time later. After a verbal exchange regarding Voorhis' reason for refusing to enter the cell, Lindsey ordered that the door to the cell be opened, and as soon as it opened, Lindsey and the other corrections officers physically pushed Voorhis into the cell. ECF No. 94-5. Voorhis appears to resist this effort. *Id.*

7

During this process, Voorhis fell upon or collided with the other inmate in the cell. *Id.* Voorhis, his cellmate, and the officers, including Lindsey, were all yelling, and the scene within the relatively small cell became chaotic. *Id.* At one point, Lindsey yelled, "Sit down and stop moving," and then, he repeated, "Sit down and stop moving, I'm not telling you again." *Id.* Voorhis sat on the bench in his cell, and it appears that any physical resistance to the officers or lack of compliance with their directions ceased at this point. *Id.* Lindsey then ordered the corrections officers to handcuff Voorhis' cellmate and remove him to another cell. *Id.* The other inmate continued to yell and resist the officers' efforts to handcuff him. *Id.* Lindsey next addressed Voorhis and, in an expletive-laden exchange, told Voorhis that he was "done with" him and that if he continued to act out, he was going to have a "terrible f--king week" in the prison. *Id.* Voorhis continued to argue with Lindsey, but he did not threaten him or the other officers. *Id.* After telling Voorhis to "shut the f--k up," and while the other officers were still attending to the other inmate, Lindsey placed his left hand around Voorhis' neck or upper shoulder. *Id.* The video is unclear whether Lindsey used his hand to apply pressure to Voorhis' neck area. Lindsey describes his hand placement as a "pressure point technique." ECF No. 114, ¶57. Lindsey asserts that this technique involved using "only his left hand up and around Mr. Voorhis' neck and shoulder area to hold him down on the bench." ECF No. 93, ¶40. Although the video is inconclusive, a reasonable jury could find that it supports Lindsey's description. *See* ECF No. 94-5. Voorhis continued to speak while Lindsey used this technique, and in a clear voice stated, "You know that's an F-2 strangulation, right?"

8

*Id.* But Voorhis did not cry out in pain or complain that he was in pain or that he could not breath. He did not lose consciousness or appear to be on the verge of losing consciousness. *Id.*

As discussed in the prior R&R, the undersigned recommended that Lindsey's motion for summary judgment be denied because a reasonable jury could find based on the evidence that the force Lindsey applied during this episode was excessive. The undersigned also recommended that Voorhis' motion be denied because a reasonable jury also could find that Lindsey's use of force was not excessive.[2] Lindsey's characterization of his hand placement as a "pressure point technique" does not alter the undersigned's assessment.

To state a claim for a constitutional violation, a plaintiff must show something more than the use of *de minimis* force. *See Hudson v. McMillian* 503 U.S. 1, 9–10 (1992) (excluding from Eighth Amendment protection the *de minimis* use of physical force). In *Hudson*, the Supreme Court explained that "not ... every malevolent touch by a prison guard gives rise to a federal cause of action." *Id. See also Moher v. U.S.*, 875 F.Supp.2d 739, 758 (W.D. Mich. 2012) ("Generally, a single isolated push, shove, punch, or blow by a prison guard or police officer using de minimis force does not rise to the level of a violation of the United States Constitution" and the same holds true even when the push or shove appears to be unnecessary.") (citations omitted).

---

[2] Without question, and as acknowledged in the prior R&R, Lindsey's decision to use any amount of force against Voorhis after his physical resistance had ended is extremely concerning. Although Voorhis remained verbally combative, the video shows that he became physically compliant and remained seated for over a minute before Lindsey used his pressure point technique on him. *See* ECF No. 94-5. Thus, as to Lindsey's hands-on use of force, the "need for force" prong of the *Whitley* analysis weighs heavily in favor of Voorhis and against Lindsey. But as discussed below, this alone does not entitle Voorhis to judgment as a matter of law.

9

Because evaluation of a particular use of force involves a multi-factor analysis, "types of force are not categorically forbidden or categorically constitutional." *Locke v. Cnty. of Hubbard*, 152 F.4th 903, 910 (8th Cir. 2025) (citation omitted). This includes the use of pressure point techniques. *See Blevins v. Mollhoff*, No. 18-CV-0343 (PJS/HB), 2020 WL 1048944, at *3 (D. Minn. Jan. 30, 2020), *report and recommendation adopted*, No. 18-CV-0343 (PJS/HB), 2020 WL 1043668 (D. Minn. Mar. 4, 2020) (finding that use of pressure point techniques in that case did not constitute excessive force).[3]   In this case, nothing in the record establishes the specifics of the pressure point technique at issue, including where and to what extent pressure was applied. Viewed favorably to Lindsey, the evidence and reasonable inferences derived therefrom can support a reasonable jury's finding that the technique used by Lindsey involved *de minimis* force. Although the video is far from clear, it appears that Lindsey's use of the technique was brief. Although Voorhis described it as a "F2 strangulation," a reasonable jury watching the video could find not only that there was no constriction of Voorhis' neck, but no significant force applied to his neck or shoulder area. A reasonable jury could also find it significant

---

[3] *Blevins* provides an example of a pressure point technique. The court described the technique at issue in that case as follows:

> Applying "touch pressure points" is an approved use of force by the DOC when a prisoner "is not compliant with staff directives." (Gurney Aff. ¶ 13.) In a typical use of pressure points, an officer "appl[ies] pressure with a finger or two to certain areas of the offender's body, usually the Hypoglossal, which is under the jaw, and the Mandibular Angle, which is under the ear near the jaw line." (*Id.*) Gurney states the pressure thus applied is uncomfortable, but it does not cause the person to be unable to breathe. (*Id.*)

*Id.* Although the *Blevins* court's example of a pressure point technique provides some helpful background, it does not add to or meaningfully clarify the lack of clarity that exists in the video record in this case.

10

that the force used did not appear to limit or impair Voorhis' ability to speak in a clear voice. In assessing whether the force was *de minimis*, the jury may also consider that Voorhis gave no indication of pain during its use, did not complain of any limitation on his ability to breath, and did not sustain any injuries due to its use.[4]

And while the evidence regarding any need for Lindsey's hands-on use of force significantly favors Voorhis, it is not entirely conclusive of this first prong of the *Whitley* analysis. Although Voorhis had become physically compliant while in the cell, not much earlier he had physically resisted officers' instructions to reenter his cell. And after Voorhis was forced into the cell and he fell upon his cellmate, a chaotic situation ensued involving not only Voorhis and the officers but Voorhis' cellmate who actively resisted being handcuffed. The cellmate was still present in the cell when Lindsey used the pressure point technique on Voorhis. That is not to say that Lindsey could act punitively against Voorhis based on his prior conduct, but the extent to which the situation remained unstable may be considered by the jury. In other words, Voorhis' physical compliance figures prominently in assessing Lindsey's use of force, but the jury may also view Voorhis' prior physical resistance and defiance of orders and his continued agitation as relevant in the broader context of the *Whitley* factors. Furthermore, as discussed, issues of fact remain regarding the extent and nature of the force used. These issues and their interplay are appropriately left to the jury's consideration. *See Abraham v. Raso*, 183 F.3d 279, 289-90 (3d Cir. 1999) (holding

---

[4] The absence of injury does not preclude a finding of excessive force, *see Hudson v. McMillian,* 503 U.S. 1, 4 (1992), but it is a relevant factor to be considered in determining whether force was excessive, *see Whitley,* 475 U.S. at 322.

11

that whether force was reasonable or excessive is typically for the jury). Finally, based on the evidence, a reasonable jury could find that Voorhis experienced little discomfort and sustained no injury because of Lindsey's pressure point technique and that this weighs against a finding that the force was excessive. For these reasons and those explained in the undersigned's prior R&R, Voorhis' motion for summary judgment should be denied, including as to the reasonableness of Lindsey's pressure point technique.

> 3. The "inconsistencies" Voorhis perceived in the prior R&R necessarily arise out of a faithful application of the Rule 56 standard of review to cross-motions for summary judgment.

Because the Court is addressing cross-motions for summary judgment, it must evaluate the evidence from different perspectives. When considering Lindsey's motion, it views the evidence and assesses reasonable inferences favorably to Voorhis. *See Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288 (3d Cir. 2018). By contrast, when considering Voorhis' motion, it is Lindsey who gets the benefit of the doubt. *Id.* Furthermore, Voorhis' motion may be granted only if he establishes the absence of any genuine issue of material fact as to each element of his claim. *See Int'l Ass'n of Heat & Frost Insulators & Asbestos Workers Loc. Union 42*, 814 F. Supp. at 401 (citations omitted). In the prior R&R, the undersigned made no "findings" beyond identifying findings that *a jury* could reasonably make based on the record evidence. Conflicts among such plausible jury findings necessarily follow from application of the Rule 56 standard to cross-motions for summary judgment.

The undersigned first evaluated Lindsey's motion. Because a reasonable jury *could* find in favor of Voorhis as to each element of his excessive force claim based upon the evidence, the R&R recommended that the Court deny Lindsey's motion. This included a plausible finding that the need for force had dissipated before Lindsey first discharged OC spray into the wicket of Voorhis' cell. But the fact that a reasonable jury could arrive at such a finding did not mean that the evidence requires a jury to do. Furthermore, such a finding alone would not entitle Voorhis to judgment as a matter of law.

In evaluating the need for some measure of force, the jury will have to consider the totality and sequence of events that preceded the first use of OC spray. Voorhis admits that he first "mule-kicked" his cell door earlier during first shift at the jail because he was dissatisfied with first-shift personnel's refusal to grant his request for a cell transfer. ECF No. 93, ¶10 (Lindsey Concise Statement); ECF No. 97 (Voorhis responsive Concise Statement).[5] When Lindsey later responded to Voorhis' continuing protests and affirmed the other officers' decision not to transfer him to another cell, Voorhis yelled, "Well, you're about to find the f—k out. You're about to find the f—k out," which Lindsey interpreted as a threat. *Id.*, ¶17. After Lindsey again told Voorhis that he would not be transferred, Voorhis stated, "I bet I am. I bet the f—k I am." *Id.*, ¶19. A reasonable jury could find that this statement expressed

---

[5] Voorhis filed a Concise Counterstatement of Material Facts in response to Lindsay's Concise Statement. ECF No. 97. However, this submission did not respond to paragraphs 1-39 of Lindsey's Concise Statement. Voorhis is therefore deemed to have admitted paragraphs 1-39 of Lindsey's Concise Statement. *See* LCvR 56(C); *Carr v. Cmty. Coll. of Allegheny Cnty.*, No. CV 19-1133, 2022 WL 525061, at *2 (W.D. Pa. Feb. 22, 2022), *report and recommendation adopted*, No. CV 19-1133, 2022 WL 854959 (W.D. Pa. Mar. 23, 2022).

13

Voorhis' intention to continue to be disruptive until prison personnel acceded to his demand. Shortly after this statement, Voorhis again forcibly mule-kicked his door twice. *Id.*, ¶20. A reasonable jury could view Voorhis' actions as a pattern of disruptive conduct and attempted property damage and construe his statements as expressing his intention to continue that pattern. The first discharge of OC spray followed shortly after Voorhis persisted in his disruptive conduct.

Based on the evidence, a reasonable jury could find that the discharge of OC spray was too brief and distant from Voorhis to constitute more than a *de minimis* use of force. The video would support a jury's finding that Lindsey's burst of OC spray was short. And Voorhis expressly acknowledges that he "was halfway or more than halfway to the back of his cell," when Lindsey first dispensed OC spray. ECF No. 88, ¶7. Finally, a reasonable jury could also view the absence of any injury from the OC spray (other than temporary discomfort) as weighing against a finding of excessive force.

In sum, an excessive force claim requires an intensely factual, multi-factor analysis. Because a plaintiff in such a case carries the burden of proving each element of his claim, the entry of summary judgment for such a plaintiff is rarely appropriate. The totality of the evidence presently of record in this case does not support the entry of judgment as a matter of law in Voorhis' favor.

E. Conclusion

The undersigned, having carefully considered the Court's Memorandum Opinion and Voorhis' objections to the undersigned's prior R&R, and having again

14

carefully reviewed the record in its entirety, respectfully recommends that Voorhis' motion for summary judgment (ECF No. 86) and Lindsey's cross-motion for summary judgment (ECF No. 91) each be denied.

III.   Notice

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(l), Fed. R. Civ. P. 72((b)(2), and Local Rule 72(D)(2), the parties are permitted to file written objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to timely file objections will waive the right to appeal. *Brightwell v. Lehman*, 637 F.3d 187, 193 n. 7 (3d Cir. 2011). Any party opposing objections may file their response to the objections within fourteen (14) days thereafter in accordance with Local Civil Rule 72(D)(2).

Dated this 18th day of June, 2026.

SUBMITTED BY:

RICHARD A. LANZILLO
Chief United States Magistrate Judge

15